**WEIL, Admrx., etc. v TAXICABS OF CINCINNATI, INC.**

Ohio Appeals, 1st Dist, Hamilton Co

No 5919. Decided Mar 17, 1941

B. Wm. Heidkamp, Cincinnati, and Arthur F. Schott, Cincinnati, for appellant.

Freiberg & Simmonds, Cincinnati, for appellee.

## OPINION

By MATTHEWS, J.

The court of common pleas sustained a demurrer to the plaintiff's amended petition, and the plaintiff having failed to file a second amended petition within the time fixed by the court, judgment was rendered for the defendant. It is from that judgment that this appeal was taken.

In her amended petition, the plaintiff alleged that the decedent, her husband, had been employed by the defendant for four or five years prior to the 26th day of November, 1938 as a night clerk in its garage; that it violated several statutes, municipal ordinances, and rules of the Industrial Commission, relating to the constrution, equipment, and operation of garages, by reason whereof, its garage was an unsafe place in which to work, in that the noxious gases, containing carbon monoxide from the motors accumulated therein, that the plaintiff's intestate inhaled the gases and contracted chronic carbon monoxide poisoning, resulting in his death on February 8th, 1939, from chronic pneumonia and cardiac break.

The plaintiff as administratrix prayed for judgment for $25,000.00, for the benefit of herself as widow and sole beneficiary under the statute, for wrongfully causing death.

It will be observed that this is an action by the administratrix of an employee against his employer for negligent failure by the employer to provide a reasonably safe place in which to work, directly resulting in the employee's death.

The question presented is whether the employer was subject to any such liability in Ohio during the period covered by the allegations of this amended petition, i. e., November 26th, 1938 to February 8th, 1939.

While counsel presented this case on the assumption that the Workmen's Compensation Act was applicable to this defendant, we find no allegation in the amended petition specifically setting forth the conditions for the applicability of that act. It only appears inferentially, if at all, but as counsel have assumed that it is applicable, we shall consider the case in accordance with the assumption.

Prior to May 26th, 1939, the Workmen's Compensation Act, relieved employers subject to and complying with the act from liability only on account of such injuries and diseases as were made compensable out of the fund under the jurisdiction of the Industrial Commission. If the employee had no provable claim against the fund, his right of action against his employer would stand or fall by the application of common law and other statutory rules, as though the Workmen's Compensation Act did not exist. **Triff, Admrx. v National Bronze & Aluminum Foundry Co., 135 Oh St 191.**

Now as carbon monoxide poisoning was not one of the occupational diseases that was compensable at the times alleged in the amended petition, the plaintiff's right of action for wrongfully causing her husband's death was not precluded by the provisions of the Workmen's Compensation Act then in effect.

But an act to amend and supplement the Workmen's Compensation Act was passed on May 25th, 1939, as an emergency measure, and apparently with the purpose of eliminating the open liability of employers disclosed by the decision in **Triff v National Bronze & Aluminum Co.**, supra, **118 O. L. 422 et seq., §1465-68a et seq GC.**

This was accomplished by making all occupational diseases compensable and by expressly providing that:

"Sec. 1465-70. Employers who comply with the provisions of * * * §1465-69 shall not be liable to respond in damages at common law or by statute, * * * for any injury, disease or bodily condition, whether such injury, disease or bodily condition is compensable under this act or not, or for any death resulting from such injury, disease or bodily condition, of any employe, wherever occurring, during the period covered by such premium so paid into the state insurance fund, or during the interval

of time in which such employer is permitted to pay such compensation direct to his injured or the dependents of his killed employes as herein provided.

"No action against an employer, who has complied with the provisions of §1465-69, to recover damages at common law or by statute for any injury, disease or bodily condition, or death resulting from any injury, disease or bodily condition of an employe arising out of his employment by such employer shall be commenced after 180 days after the effective date of this act."

It will be observed that, according to the allegations of the amended petition, the disease was contracted and the death occurred before the statute was amended.

Now it is claimed that the amended statute is applicable, and, that, therefore, no cause of action is stated against the defendant. The basis of this claim is found in the language of §1465-68a GC, that: "Every employe who is disabled because of the contraction of an occupational disease * * * shall on and after July 1st. 1921 be entitled" to compensation from the Workmen's Compensation Fund.

As §1465-68a GC, was amended at the same time, the entire section, including this date of July 1st, 1921, appears in the amended section, and the original section was repealed.

It is argued that as the employee was thereby made eligible for compensation on and after July 1st, 1921, the employer is exempt from all personal liability on account of occupational diseases contracted by his employees on and after that date. In answer to the argument that this would disturb vested rights, it is said that this amendment relates to the remedy only, and, for that reason, is without constitutional infirmity

As we have reached the conclusion that the legislature did not intend to give this amendment a retroactive operation, it is unnecessary for us to determine whether that would be possible under the state and federal constitutions.

Prior to 1921, there was no statutory provision for compensation for any occupational disease out of the Workmen's Compensation Fund. While the constitution authorized the legislature to so provide, it had not done so. The legislature of that year amended the Workmen's Compensation Act to provide for compensation on account of certain enumerated occupational diseases. This amendment was passed on April 20th, 1921 (109 O. L. 181), and it was in this amendment that the date July 1st, 1921 appeared for the first time in this act. It appeared in §1465-68a, as then amended. It will be noted that thereby the operation of the amendment was postponed for seventy days after the passage of the amendment. Manifestly, that legislature had no intention of giving its enactment a retroactive operation by the use of those words. In the intervening years the legislature has amended that section four times including this amendment now under consideration. 113 O. L. 257, 114 O. L. 28, 117 O. L. 268, 118 O. L. 422. While by these amendments the field of compensability for occupational diseases has been widened progressively so as finally to include all, the commencement date, of July 1st, 1921, has remained unchanged. Now by carrying this date into the amended law, did the legislature intend to make it applicable to the new provisions incorporated by the amendments so as to make them applicable retrospectively as of that date? If so, they are given an effect directly opposite to the original, in that originally they postponed the operation of the law, and now they make it apply to events anterior to its enactment.

Sec. 1465-68b GC, was enacted in 1921 as a part of the original enactment. By it, all the rights, benefits and immunities, and all the liabilities, penalties and regulations provided for injured employees and their employers by §1465-44 to 1465-108 GC, inclusive, except §1465-90 GC, are made applicable to employees contracting occupational diseases. This made §1465-72a GC, applicable to claims based on occupational

diseases, and required that application for compensation be filed within two years after the disability or death occured.

Now, as there was no right to compensation from the Workmen's Compensation Fund prior to this enactment, this provision operated so that there was no discrimination among the claimants based on the occupational disease causing the disability or death, the only requirement being that it resulted from one of the enumerated diseases. But each of the amendments added to the list of compensable diseases. By the amendment of 1929 (113 O. L. 258) there were added three diseases; by the amendment of 1931 (114 O. L. 26) there were added three more; by the amendment of 1937 (117 O. L. 268) one more; and by the latest amendment (118 O. L. 422) there was added the omnibus provision of "all other occupational diseases." Now an employee, who between 1921 and 1929 had contracted one of the additional diseases made compensable by the amendment of 1929, would be barred by §1465-72a unless the disability or death occurred within the two years preceding the amendment, even though the amendment be read as though enacted in 1921. The same result would ensue by applying this reasoning to each amendment, the general effect being to make each amendment retroactive for two years from its enactment, rather than all retroactive as of 1921. This would attribute to the legislature an intent to make the last amendment retroactive for 18 years, and then bar all compensation unless application had been filed within two years of the disability or death. Such a construction would create claims that would be immediately barred. Did the legislature intend this result? We cannot so conclude.

It is a canon of construction of general application that retroactive laws are not favored by the courts "which struggle to construe statutes so as to give them a prospective rather than a retrospective operation." 37 O. Jur. 819.

This rule is as applicable to workmen's compensation laws as to laws on other subjects. 42 O. Jur. 580. Now how is this general principle applied to laws altering, amending, supplementing, repealing, and re-enacting existing laws?

By §16 of Art. II of the Ohio Constitution it is provided that no law shall be amended "unless the new act contains the entire * * * section or sections amended, and the section or sections so amended shall be repealed."

It was in obedience to this constitutional mandate that these amendatory acts contained the entire sections so amended and that the existing sections were repealed. Compliance with that provision does not destroy the fact that the language used in the original sections was not enacted when it was included in the amended section, but at a prior time and has had a continuous, uninterrupted existence from that time, whereas the new portion became a law at the time of the amendment. This is the rule in other states having similar constitutional provisions, as shown by the cases and text-books cited by the Ohio Attorney General in opinion number 2209, of 1934.

It is also the rule in the absence of constitutional provision. In 25 R. C. L. 907, it is said:

"When a statute continues a former statute law, that law common to both acts dates from its first adoption, and only such provisions of the old act as are left out of the new one are gone, and only new provisions are new laws. Where an act is amended 'so as to read as follows' the part of the original act which remains unchanged is considered as having continued in force as the law from the time of its original enactment and the new portions as having become the law only at the time of the amendment."

It should be observed that the legislature in amending this se en express-ly stated that it was amended so as

"to read as follows", so that the rule followed in other states is directly applicable to this amendment.

So we conclude, as a matter of statutory interpretation that the provision in the original enactment, that it should take effect on July 1st, 1921, was not made applicable to the subsequent amendments, and that the last amendment, now under consideration, did not become operative until its enactment in May, 1939, and this in accordance with the express provision of the emergency section that it should go into effect immediately.

It should also be noted that a construction that would make these amendments retroactive as of July 1st, 1921 would create claims having no prior existence, or, having existed, had become barred as against the employer by the running of the statute of limitations. To require an employer to contribute to the payment of such claims would, to say the least, be of doubtful constitutionality. Railroad Retirement Board v Alton R. Co., 295 U. S. 330, at 354. We believe it was the intention of the legislature by the amendment to substitute the right to compensation from the state fund in place of any and all other remedies that might exist, and to provide for the disposition of all existing employer liability by requiring such claims to be asserted against the employer within 180 days after the effective date of the amendment.

We are also of the opinion that our conclusion is in conformity with the general rule of statutory construction, prescribed by §26 GC, in which it is enacted that repealing or amending statutes shall not "affect causes of action, prosecutions, or proceedings, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

Certainly, this amending or repealing act did not expressly provide that actions for wrongful death then exist-

ing should no longer exist. On the contrary, it expressly provided a period of limitation in which such actions should be brought.

For these reasons, the judgment is reversed, and the cause remanded for further proceedings according to law.

ROSS and HAMILTON, JJ., concur.